Mark L. Javitch (CA SBN 323729)
Javitch Law Office
480 S. Ellsworth Ave
San Mateo, CA 94401
Telephone: 650-781-8000
Facsimile: 650-648-0705
mark@javitchlawoffice.com
*Attorney for Plaintiff*
and the Putative Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BRIAN SCHLESINGER, individually and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>SHORE FUNDING SOLUTIONS INC., a New York corporation, JOHN DOES 1-5, unknown business entities<br><br>Defendants. | Case No.: 3:19-cv-05646<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

1. Plaintiff BRIAN SCHLESINGER ("Plaintiff") brings this First Amended Class Action Complaint and Demand for Jury Trial against Defendant SHORE FUNDING SOLUTIONS INC., ("Shore") and Defendant JOHN DOES 1-5 (together, "Defendants") to stop their illegal practice of making unauthorized calls that play prerecorded voice messages to the telephones of consumers nationwide, and to obtain redress for all persons injured by their conduct. Plaintiff alleges as follows upon personal knowledge as to itself and its own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by its attorney.

1

**NATURE OF THE ACTION**

2. Defendant Shore sells services placing listings on online directory services such as Google. As a primary part of their marketing efforts, Defendant and its agents JOHN DOES 1-5 (John Doe) placed thousands of calls employing an artificial or prerecorded voice message to cell phones and residential phones nationwide.

3. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted) ("the FCC Letter").

4. Defendants had not received consent prior to placing these calls and, therefore, are in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

5. Congress enacted the TCPA in 1991 to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

6. Despite such strong legislation passed almost 30 years ago, the same problem persists.

7. To illustrate the scale of the problem facing America, it is estimated that there were over 47 billion robocalls placed in 2018, and 29 billion placed in just the first half of 2019.

8. Robocallers repeatedly and blatantly violate federal law with impunity because their calls are made anonymously. They are so hard to track down that they are rarely caught, so robocall volumes have continued to rise.

9. Most of the perpetrators are never identified because of the way companies structure their business and outsource their robocalling to third parties who offer a shield from scrutiny.

10. This strategy enables companies to accept the revenue generated by mass robocalling while pointing out to the court that they do not even "make" phone calls.

11. Thus, catching robocallers is only possible when a Good Samaritan Plaintiff spends the time and effort necessary to investigate the identity of the caller after a robocall occurs.

12. But this is the rare case where Plaintiff actually spent the time and effort needed to identify the wrongdoers.

13. Plaintiff was able to identify the specific products being marketed via robocalls by purchasing the solicited services and obtaining documentary evidence.

14. The TCPA targets unauthorized calls exactly like the ones alleged in this case, based on Defendants' use of technological equipment to spam consumers with its advertising on a grand scale.

15. By placing the calls at issue, Defendants have violated the privacy and statutory rights of Plaintiff and the Class.

16. Plaintiff therefore seeks an injunction requiring Defendants to stop its unconsented calling, as well as an award of actual and statutory damages to the Class members, together with costs and reasonable attorneys' fees.

**PARTIES**

17. Plaintiff BRIAN SCHLESINGER is a natural person and is a citizen of the Northern District of California.

18. Defendant Shore is a corporation organizing and existing under the laws of the State of New York with its principal place of business at 2 Huntington Quadrangle, Suite 1N15, Melville, NY 01174.

19. Defendant JOHN DOES 1-5 ("John Doe") are unknown business entities.

## JURISDICTION AND VENUE

20. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

21. This Court has personal specific jurisdiction over Defendants because Defendants targeted consumers with their advertisements in California, including to Plaintiff, who resides in San Mateo County, California. Defendants' marketing towards residents of California is the subject of this dispute from which this lawsuit arises.

22. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the conduct giving rise to this case, telephone calls placed to residents of California, substantially occurred in this District.

## COMMON FACTUAL ALLEGATIONS

23. Defendant Shore sells its business capital services.

24. Defendant John Does 1-5 are unknown business entities.

25. To increase their sales and avoid paying for legitimate forms of advertising, Shore, hired John Doe to market their company and produce inbound calls.

26. John Doe amassed a list of thousands of phone numbers from unknown sources that were believed to belong to business phone numbers, but Defendants did not actually segregate out cellular and residential phones as would have been required for the calls to be (potentially) legal.

27. Shore failed to ensure that John Doe was not also calling residential and cellular phones as prohibited by 47 U.S.C. § 227(b)(1)(A)(iii) and 47 U.S.C. § 227(b)(1)(B).

28. John Doe 1 called and played artificial or prerecorded voice messages to thousands of cellular and residential phones at a time.

29. When Plaintiff and the Class members answered expecting to hear from a real person, John Doe pulled a bait and switch by playing an artificial or prerecorded voice message.

30. Defendants respected Class members' time and privacy so little that they did not even hire a real person to call them—they used a machine to play prerecorded messages to thousands of consumers at once.

31. Defendants hoped that if enough people purchased their product as a result of the robocalls, it would justify the annoyance experienced by the recipients of the calls as the "cost of doing business."

32. Defendants did not possess consent from Plaintiff and the Class as required prior to deploying these prohibited messages.

**FACTS SPECIFIC TO PLAINTIFF BRIAN SCHLESINGER**

33. On or around September 3, 2019, Plaintiff received a call from Defendant and/or its agent John Doe on Plaintiff's cell phone ending in 6760.

34. The caller ID displayed as 845-237-3820.

35. When Plaintiff answered the phone, Plaintiff heard an artificial or prerecorded voice message advertising fast business capital loans.

36. The voice informed Plaintiff that access to fast business capital was available.

37. The message said to "press one" to speak to a representative.

38. Although Plaintiff was not interested in business capital, fast or slow, Plaintiff followed the prompts and was connected with a live representative.

39. When a live agent came on the phone, Plaintiff was solicited for Defendant's fast business capital services.

40. The live representative identified himself as Monte Simmons from Shore Funding Solutions.

41. Mr. Simmons gave his call back number as 631-284-4083.

42. Plaintiff never consented to receive calls from Defendants.  Plaintiff had no relationship with Defendants and had never requested that Defendants contact Plaintiff in any manner, let alone by robocall.

## THEORIES OF LIABILITY AGAINST DEFENDANTS

43. Even if Shore did not personally initiate the TCPA-violating calls, Shore is liable if it took steps to cause the calls to be made, or if the calls were made pursuant to its actual or apparent authority, or ratification.   Further, Shore is liable for participating in a joint enterprise or acting in concert with John Doe.

## DIRECT LIABILITY UNDER THE TCPA

47. Defendants' scheme involves the use of illegal robocalling to promote their services.

48. John Does has direct liability under the TCPA for calling Plaintiff's phone using an artificial or prerecorded voice.

49. Shore is also directly liable under the TCPA for outsourcing their telemarketing to John Doe.

50. On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief.  As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

### VICARIOUS / AGENCY LIABILITY

51.     The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id*. at 6587 n. 107.

52.     Prior to conducting discovery in this litigation, due to the anonymous nature of robocalling, Plaintiff has no way to identify the exact parties who called its phone. It could have been Shore or some other unknown company John Doe.

53.     However, for the purposes of TCPA liability, Plaintiff is not expected to know this information at the pleading stage.

54.     The May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id*. at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id*. at 6593 (¶ 46).

## ACTUAL AUTHORITY

55. Defendant Shore gave actual authority to John Doe to generate prospective customers.

56. Shore's integration of robocalling into their sales process was so seamless that it appeared to outside parties like Plaintiff that John Doe was the telemarketing department of Shore.

57. Shore acted in concert with John Doe and has been able to enjoy the benefits of mass robocalling while moving the illegal activity "outside their purview."

58. John Doe had actual authority to make robocalls to Plaintiff on behalf of Defendant Shore

59. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

60. In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id*. (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

61. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

## APPARENT AUTHORITY

62. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive

control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 FCC Rcd at 6592 (¶ 46).

63. Shore authorized John Doe to generate prospective customers for them.

64. The integration of Shore's sales efforts with robocalling by John Doe was so seamless that it appeared to Plaintiff that John Doe was one and the same company with Shore.

65. Plaintiff reasonably believed and relied on the fact that John Doe 1 had received permission and instructions from Shore to advertise its fast capital business loans.

## RATIFICATION

66. Defendant Shore actively accepted business that originated through the illegal robocalls placed by John Doe.

67. By accepting a contract written with Plaintiff pursuant to a robocall, Shore "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of Defendant John Doe, as described in the Restatement (Third) of Agency.

68. Shore ratified John Doe's TCPA violations by knowingly accepting the benefit of Plaintiff as a new customer despite the fact that the way Plaintiff were the victim of Defendants' illegal marketing scheme.

69. Shore permitted their salespeople to solicit to prospective customers, including Plaintiff, while turning a blind eye to the illegal way in which the potential customer was identified.

70. Shore ratified John Doe's TCPA violations by being willfully ignorant of the violations or by being aware that such knowledge was lacking.

71. The ratification by Shore caused John Doe 1 to have actual authority under Restatement § 4.01 cmt. b.

**JOINT ENTERPRISE**

72. Shore had a tacit agreement or approved of after the fact with John Doe for the sale of their products pursuant to John Doe's illegal robocalls.

73. Defendants were part of a common enterprise and had a community of interest in selling Shore's services for fast business capital loans.

74. Shore had an equal right to control the conduct thereof by specifying the type of people to be called, the questions that should be asked to prospective consumers, and how to write and execute contracts on behalf of Shore.

75. Defendants had a duty to exercise due care when placing phone calls marketing their products.

76. Defendants' violation of the TCPA is negligence per se.

77. Because of Defendants' negligence, Plaintiff suffered statutory and actual damage.

78. Shore and John Doe are jointly and severally liable for the resulting damage.

**ACTING IN CONCERT**

79. Defendants were part of a common design to robocall consumers and then sell Shore's fast business capital loans.

80. Shore had a tacit understanding that John Doe was robocalling in violation of the TCPA.

81. Shore knew that John Doe's conduct was a breach of duty to Plaintiff.

82. Shore gave John Doe substantial assistance in accomplishing the tortious result, including compensating John Doe for generating customers pursuant to robocalls and giving instructions on how to represent them and what to ask the people that had been robocalled.

83. Shore furthered the tortious conduct by their cooperation with John Doe and adoped John Doe's robocalling and solicitation for their own benefit.

84. Shore's own conduct constitutes a breach of duty to Plaintiff.

85. Plaintiff's injury is indivisible.

86. All Defendants acted tortiously and the harm resulted from the robocalling of John Doe.

87. Shore and John Doe are joint and severally liable for the resulting damage.

## CLASS ALLEGATIONS

89. **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(1), 23(b)(2) and/or 23(b)(3) on behalf of Plaintiff and a class and subclass defined as follows:

> **TCPA Class**. All persons in the United States who: (1) from the last 4 years to the filing of this complaint (2) received at least one telephone call; (3) on his or her cellular or residential telephone; (4) that used an artificial or prerecorded voice; (5) for the purpose of selling Shore's products or services; (6) where Defendants did not have the recipient's express written consent prior to placing the calls.
>
> **CLRA Subclass**. All persons in California who: (1) from the last 4 years to the filing of this complaint (2) received at least one telephone call; (3) on his or her telephone; (4) that used a prerecorded voice; (5) for the purpose of selling Shore's services; (6) where Defendant did not have prior express written consent to place such call at the time it was made.

90. The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute

and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

91. **Numerosity**: The exact number of the Class members is unknown and not available to Plaintiff, but it is clear that individual joinder is impracticable. On information and belief, Defendants placed telephone calls to thousands of consumers who fall into the definition of the Class. Members of the Class can be identified through Defendants' records.

92. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited telephone calls.

93. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the proposed Class. Plaintiff and Plaintiff's counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so.

94. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' practices challenged herein apply to and affect the Class

members uniformly, and Plaintiff's challenge of those practices hinge on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

95. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

   i. Whether Defendants' conduct violated the TCPA;

   ii. Whether Defendants' conduct violated the TCPA *willingly* and/or *knowingly*;

   iii. Whether Defendants' conduct violated the CLRA;

   iv. Whether Defendants possessed express written consent prior to contacting Plaintiff and the members of the Class;

   v. Whether members of the Class are entitled to treble damages based on the knowingness or willfulness of Defendants' conduct.

96. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication,

economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
Violation of 47 U.S.C. § 227
Telephone Consumer Protection Act
Against all Defendants
**(On behalf of Plaintiff and the TCPA Class)**

97. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

98. John Doe 1 placed telephone calls to Plaintiff's and the Class members' cellular and/or residential telephones without having their prior express written consent to do so.

99. The calls were made for the express purpose of soliciting customers for Shore's fast business capital loans.

100. When Plaintiff and the Class answered, the calls played an artificial or prerecorded voice message to their cellular and/or residential phones as proscribed by 47 U.S.C. § 227(b)(1)(A)(iii) and 47 U.S.C. § 227(b)(1)(B).

101. As a result of its unlawful conduct, Defendants repeatedly invaded Plaintiff's and the Class's personal privacy, causing them to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling them to recover $500 in civil fines for each violation and an injunction requiring Defendants to stop their illegal calling campaign.

102. Defendants and/or its agent made the violating calls "*willfully*" and/or "*knowingly*" under 47 U.S.C. § 227(b)(3)(C).

103. If the court finds that Defendants *willfully* and/or *knowingly* violated this subsection, the court may increase the civil fine from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

**SECOND CAUSE OF ACTION**
Violation of Cal. Civ. Code §1770(a)(22)(A)
**California Consumer Legal Remedies Act**
**Injunctive Relief**
**(on behalf of Plaintiff and the CLRA Subclass)**

104. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

105. Shore and John Doe placed telephone calls to Plaintiff's and the Class members' telephones.

106. Defendants did not have consent to place such calls.

107. Defendants' calls were made for a commercial purpose.

108. When Plaintiff and the Subclass answered their phones, they heard an artificial or prerecorded voice message.

109. The calls did not first begin by introducing the organization calling and asking permission from a natural voice, as required by Cal. Civ. Code §1770(a)(22)(A).

110. As a result of its unlawful conduct, Defendants repeatedly invaded Plaintiff's and the Class's personal privacy.

111. Plaintiff seeks injunctive relief.

**THIRD CAUSE OF ACTION**
Negligence / Negligence Per Se
(Against all Defendants on Behalf of Plaintiff)

112. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

113. Defendants owed Plaintiff a duty of due care when making calls marketing its services to Plaintiff.

114. As set out above, Defendants violated the TCPA and CLRA by placing robocalls to Plaintiff.

115. Defendants' violations constitute a rebuttable presumption of negligence under the doctrine of *negligence per se*.

116. The violations proximately caused Plaintiff to incur actual and statutory damages.

117. The violations were not excused.

118. The damages Plaintiff suffered were the kind that the TCPA was designed to prevent.

119. Shore is liable for damages caused by John Doe through the agency and vicarious liability principles pled herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff BRIAN SCHLESINGER, individually and on behalf of the Class, prays for the following relief:

A. An order certifying the Class as defined above, appointing Plaintiff BRIAN SCHLESINGER as the Class representative and appointing Plaintiff's counsel as Class Counsel;

B. An order declaring that Defendants' actions, as set out above, violate the TCPA;

C. An order declaring that Defendants' actions, as set out above, violate the TCPA *willfully* and *knowingly*;

D. An order declaring that Defendants' actions, as set out above, violate Cal. Civ. Code §1770(a)(22)(A).

E. An order declaring that Defendants' actions, as set out above, constitute negligence;

F. An injunction requiring Defendants to cease all unlawful calls without first obtaining the call recipient's express written consent to receive such calls, and otherwise protecting interests of the Class;

G. An award of statutory damages and penalties;

H.    An award of costs; and

I.    Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: September 8, 2019

    Respectfully submitted,

BRIAN SCHLESINGER, individually and on behalf of all others similarly situated,

By: /s/ Mark L. Javitch       .

Mark L. Javitch (California SBN 323729)
480 S. Ellsworth Ave
San Mateo CA 94401
Tel: 650-781-8000
Fax: 650-648-0705

Attorney for Plaintiff
*and the Putative Class*

**Cal. Civ. Code 1780(d) Affidavit**

1. Plaintiff's residence is in San Mateo County, California.
2. The nearest court where Plaintiff's TCPA and CLRA claims could both be heard is the Northern District of California in San Francisco, California.
3. Therefore, this court is the proper place for the trial of the action.
4. I declare that the foregoing is true and correct under the laws of the State of California and the United States of America.

DATED: September 8, 2019

                    Respectfully submitted,

                    MARK L. JAVITCH

                    By: /s/ Mark L. Javitch      .
                    *Attorney for Plaintiff*
                    BRIAN SCHLESINGER
                    *and the Putative Class*